UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEVEN STRANGE and TANISHA STRANGE | § | |
| | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:11-CV-2642-B |
| | § | |
| FLAGSTAR BANK, FSB | § | |
| | § | |
| Defendant. | § | |

<u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Defendant Flagstar Bank, FSB's Motion to Dismiss, or in the Alternative Motion For More Definite Statement (doc. 6). For the following reasons, the Court finds Defendant's Motion to Dismiss should be, and hereby is, **GRANTED**. Plaintiffs' case is **DISMISSED as follows**.

I.

BACKGROUND[1]

In June 2005, Plaintiffs Steven Strange and Tanisha Strange (collectively the "Stranges" or "Plaintiffs") purchased the real property located at 1005 Wentwood Drive, DeSoto, Texas 75115 (the "Property"). Pl.'s Pet. ¶5. To finance the purchase of the Property, Plaintiffs obtained a secured home mortgage loan. Plaintiffs and Defendant Flagstar Bank, FSB ("Flagstar" or "Defendant") executed a "security agreement" and Defendant operated as servicer of the loan. *Id.* at ¶ 7, 17. In

---

[1] The Court draws its factual account from the allegations contained in Plaintiffs' Original Petition ("Pl.'s Pet."), unless otherwise noted. *See, e.g., Manguno v. Prudential Prop. And Cas. Ins. Co.*, 276 F.3d 720, 725 (5th Cir. 2002) (noting that when considering a motion to dismiss pursuant to Rule 12(b)(6), "all facts pleaded in the complaint must be taken as true").

2010, the Stranges fell behind on their mortgage payments. *Id.* at ¶ 8. In December 2010, they applied for a loan modification under the Home Affordable Modification Program ("HAMP"). *Id.* at ¶ 9. From January 2011, to March 2011, Plaintiffs' application for a HAMP loan modification was under review. *Id.* at ¶ 10–11. Defendant Flagstar then began foreclosure proceedings scheduling Plaintiffs' Property for a foreclosure sale. *Id.* at ¶ 13. Plaintiffs maintain that they did not receive notice of the foreclosure sale. *Id.* at ¶ 15. On April 5, 2011 Flagstar proceeded with the foreclosure sale and obtained title to the Property. *Id.* at ¶ 16.

On September 12, 2011, Plaintiffs filed the instant suit in the 101st Judicial District of Dallas County, Texas for breach of contract, wrongful foreclosure, suit to quiet title, and intentional infliction of emotional distress. Plaintiffs seek damages as well as injunctive relief. *Id.* at ¶ 42. On October 7, 2011, Defendant removed the case to this Court and on October 21, 2011, filed the instant Motion to Dismiss, or in the Alternative Motion For More Definite Statement ("Motion") (doc. 6). Defendant's Motion has been fully briefed by the parties and is ripe for decision.

## II.

## LEGAL STANDARD

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes the court to dismiss a plaintiff's complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)(quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir.

2004)). In order to survive such a motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, ___, 129 S.Ct. 1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1950 (quoting Fed. Rule Civ. P. 8(a)(2)).

## III.

## ANALYSIS

A.    *Breach of Contract*

Plaintiffs' breach of contract claim is grounded in a somewhat novel theory based, in part, upon the parties' obligations under their "security agreement" which contains a provision obligating the Defendant to "comply with federal, state and local laws." Pl.'s Pet. ¶ 17. Plaintiffs also rely upon the Defendant's obligations under the Servicer Participation Agreement ("SPA") with the United States Secretary of the Treasury agreeing to participate in the federal HAMP loan modification program. *Id.* at ¶ 20. According to Plaintiffs, under the SPA, Defendant agreed to comply with all applicable HAMP guidelines—including directives that "prohibit loan servicers from foreclosing on homes while they are [under] consideration for a HAMP modification" and that prohibit conducting

a foreclosure sale within thirty days of a determination of borrower ineligibility for the HAMP program. *Id*. at ¶ 22. Plaintiffs maintain that the Defendant conducted its foreclosure sale in violation of these HAMP guidelines thereby breaching the SPA and, in turn, its security agreement with Plaintiffs.

      1.     *Breach of Servicer Participation Agreement*

A third party to a contract—such as the Stranges—may enforce a contract to which it was not a party, "when the parties to the contract entered the agreement with the clear and express intention of directly benefitting the third party." *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011) (citing *MCI Telecomms. Corp. v. Tex. Util. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999)). When such a clear and express intent is absent from the contract, and instead the contract confers only an indirect, incidental benefit, a third party cannot enforce the contract. *See Tawes*, 340 S.W.3d at 425. As a starting point, Texas courts presume parties enter into a contract for their own benefit, and not to create third-party beneficiary agreements. *See Cade v. BAC Home Loans Servicing, LP*, No. H-10-4224, 2011 WL 2470733, at *2 (S.D. Tex. June 20, 2011). "Therefore, in the absence of a clear and unequivocal expression of the contracting parties' intent to directly benefit a third party, courts will not confer third-party beneficiary status by implication." *Tawes*, 340 S.W.3d at 425 (citing *MCI Telecomms. Corp.*, 995 S.W.2d at 651).

The Home Affordable Modification Program, or HAMP, was established by the U.S. Department of the Treasury pursuant to authority provided in the Emergency Economic Stabilization Act of 2008. 12 U.S.C. § 5201 *et seq* (2010). HAMP was initiated as part of a series of efforts to stabilize the country's housing and financial system. *See* 12 U.S.C. §§ 5201(1) (2010). HAMP allows for the United States government and banks to enter into contracts—known as Servicer

Participation Agreements—that provide incentives for banks to provide home mortgage loan modifications. *Nevada v. Bank of America Corp.*, No. 12-15005, 2012 WL 688552 at *2 n.1 (9th Cir. March 2, 2012) ("Under HAMP, individual loan servicers voluntarily enter into contracts with Fannie Mae, acting as the financial agent of the United States, to perform loan modification services in exchange for certain financial incentives.") (quoting *Newell v. Wells Fargo Bank, N.A.*, No. C 10-05138 WHA, 2012 WL 27783, at *1(N.D. Cal. Jan. 5, 2012)).

Litigation involving banks' compliance with HAMP is evolving, but is not unchartered territory. Judge Miller of the United States District Court for the Southern District of Texas recently summarized the current view of HAMP litigation as follows:

> [T]he majority of courts faced with HAMP questions . . . have determined that no private right of action to enforce lender compliance exists under HAMP. This majority has declined to find a private right, and further rejected the theory that borrowers are intended third-party beneficiaries of the HAMP Servicer Participation Agreement ("SPA"), an agreement that incorporates obligations arising under the Emergency Economic Stabilization Act, and records a loan servicer's agreement to satisfy those obligations.

*Cade v. BAC Home Loans Servicing, LP*, No. H-10-4224, 2011 WL 2470733, at *2 (S.D. Tex. June 20, 2011) (internal citations omitted) (citing *See, e.g., Adams v. U.S. Bank*, No. 10–10567, 2010 WL 2670702, at *4 (E.D.Mich. July 1, 2010)); *Hofman v. Bank of Am., N .A.*, No. C 10–2171 SI, 2010 WL 2635773, at *5 (N.D.Cal. June 30, 2010); *Zendejas v. GMAC Wholesale Mortg. Corp.*, No. 1:10–CV–00184 OWW GSA, 2010 WL 2629899, at *4 (E.D. Cal. June 29, 2010); *Simmons v. Countrywide Home Loans, Inc.*, No. 09cv1245 JAH(JMA), 2010 WL 2635220, at *5 (S.D. Cal. June 29, 2010); *Simon v. Bank of Am., N.A.*, No. 10–cv–00300–GMN–LRL, 2010 WL 2609436, at *10 (D.Nev. June 23, 2010); *Marks v. Bank of Am., N.A.*, No. 03:10–cv–08039–PHX–JAT, 2010 WL 2572988, at *5–7 (D.Ariz. June 22, 2010). *But see Marques v. Wells Fargo Home Mortg., Inc.*,

09–1985–L, 2010 WL 3212131 (S.D.Cal. Aug.12, 2010) (a plaintiff may be able to state a claim against the defendant as an intended beneficiary of servicer participation agreement); *Reyes v. Saxon Mortg. Servs.*, No. 09cv1366 DMS (WMC), 2009 U.S. Dist. LEXIS 125235, 2009 WL 3738177 (S.D.Cal. November 5, 2009), (finding a claim of breach of contract of the HAMP SPA based on a third-party beneficiary theory to be plausible)).

      This Court finds Judge Miller's reasoning in *Cade* persuasive in concluding that plaintiffs do not have standing as third-party beneficiaries to bring a breach of contract claim under HAMP. While compliance with the HAMP guidelines and directives yields certain benefits to individuals with home mortgages in the form of loan modifications and standardized foreclosure practices, this does not render the home owners third-party beneficiaries of the Defendant's Servicer Participation Agreement with the Treasury Department. *See Astra USA, Inc. v. Santa Clara Cty.*, 131 S.Ct. 1342, 1348 (2011) ("The distinction between an intention to benefit a third party and an intention that the third party should have the right to enforce that intention is emphasized where the promisee is a governmental entity.") (internal citations omitted). To be considered third-party beneficiaries under the HAMP SPA, plaintiffs must show clear and express intent of the contracting parties to directly benefit a third party. *See Tawes*, 340 S.W.3d at 425. Plaintiffs provide no authority and no citation to the SPA or HAMP guidelines that might evidence such a clear and express intent, and the Court does not find such evidence either. Plaintiffs do not have standing as third-party beneficiaries to bring a breach of contract claim under the HAMP SPA. Accordingly, Plaintiffs' claim for breach of contract with respect to the HAMP SPA is **DISMISSED with prejudice**.

      2.    *Breach of the Security Agreement*

      The Stranges also allege that Flagstar Bank breached a provision in the Security Agreement

requiring Defendant to comply with applicable federal, state, and local laws, when Defendant failed to follow the HAMP guidelines. As discussed above, the SPA is the contractual vehicle by which mortgage servicers agree to abide by the statutory provisions contained in HAMP. When a government contract confirms a statutory obligation, "'a third-party private contract action [to enforce that obligation] would be inconsistent with . . . the legislative scheme . . . to the same extent as would a cause of action directly under the statute.'" *Astra USA, Inc.*, 131 S.Ct. at 1348 (quoting *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2nd Cir. 2003). Permitting a third-party suit to enforce the contractual obligations—whether as a third-party beneficiary to the government contract or under a separate contract between a party and a third party—would circumvent Congress's decision not to permit private enforcement of the statute. *Id.* at 1348 n.4. In short, Plaintiffs cannot allege a viable breach of contract claim based on Defendant's alleged noncompliance with HAMP.

Plaintiffs' breach of contract claim is premised on Defendant's alleged noncompliance with HAMP guidelines and the security agreement, and is **DISMISSED with prejudice**.

B. *Wrongful Foreclosure*

In order to state a claim for wrongful foreclosure under Texas law, Plaintiffs must allege "(1) a defect in the foreclosure sale; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price." *Garcia v. Bank of New York Mellon*, No. 3:12-CV-0062-D, 2012 WL 692099 (N.D. Tex. March 5, 2012) (citing *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App. 2008, no pet.)).

In this case, Plaintiffs allege they failed to receive proper notice required by Texas Property Code Section 51.002. Failure to provide notice as required under Texas law and the Deed of Trust may constitute an actionable defect in the foreclosure sale. *See Tamplen v. Bryeans*, 640 S.W.2d 421

(Tex. App.-Waco 1982). Plaintiffs fail to allege, however, a grossly inadequate selling price at the foreclosure sale, let alone any causal connection between the alleged defect and the inadequate selling price. Plaintiffs have failed to state a claim for wrongful foreclosure under Texas law. Lastly, the Defendant maintains and the Plaintifss do no deny that they are still in possession of the subject property. "[T]here can be no recovery for wrongful foreclosure if the mortgagor does not lose possession of the property." *Marquez v. Fed. Nat'l Mortg. Ass.'n,* No. 3:10-cv-2040-L, 2011 WL 3714623, at *6 (N.D. Tex. 2011). Accordingly, Plaintiffs' claim for wrongful foreclosure is **DISMISSED without prejudice.**

      C.     *Suit to Quiet Title*

      Under Texas law, a suit to quiet title, or an action to remove cloud to title, is an equitable cause of action that clears invalid charges against the title to real property. *Fricks v. Hancock*, 45 S.W.3d 322, 327 (Tex. App.-Corpus Christi 2001). To prevail in a suit to quiet title action, a plaintiff must show "(1) an interest in a specific property, (2) title to the property is affected by a claim by the defendant, and (3) the claim, although facially valid, is invalid or unenforceable." *Bell v. Bank of America Home Loan Servicing*, No. 4:11-cv-02085, 2012 WL 568755, at *7 (S.D. Tex. Feb. 21, 2012) (citing *U.S. Nat. Bank Ass'n v. Johnson*, No. 01-10-00837-CV, 2011 WL 6938507, at *3 (Tex.App.-Houston [1st Dist.] Dec. 30, 2011)). "Any deed, contract, judgment or other instrument not void on its face which purports to convey any interest in or makes any charge upon the land of a true owner, the invalidity of which would require proof, is a cloud upon the legal title of the owner." *Best Inv. Co. v. Parkhill*, 429 S.W.2d 531, 534 (Tex. Civ. App.-Corpus Christi 1968). In a suit to quiet title, a plaintiff must also rely on the strength of their own title, not the weaknesses of their adversary's title. *Fricks*, 45 S.W.3d at 327.

In Plaintiffs' Original Petition, they do not support their "Declaration of Title/Suit to Quiet Title" claim with any specific factual allegations.[2] Pl.'s Orig. Pet. 33–34. Plaintiffs rely entirely on their breach of contract and wrongful foreclosure claims. Accordingly, Plaintiffs' claim for suit to quiet title is **DISMISSED with prejudice**.

    D.    *Intentional Infliction of Emotional Distress*

To state a claim for intentional infliction of emotional distress under Texas law, a plaintiff must allege that "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004) (citing *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 65 (Tex. 1998)). Liability can only be found where the defendant's conduct was "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993) (quoting Restatement (Second) of Torts § 46 cmt. d. (1965)).

In this case, Plaintiffs merely allege that Defendant's alleged violation of HAMP guidelines and performance of a foreclosure sale without providing proper notice caused severe emotional distress. Pl.'s Orig. Pet. ¶ 35–36. Plaintiffs argue in their Response that because "Defendant is an informed mortgage company who hired a legal professional to conduct the foreclosure shows that

---

[2] Strangely, Plaintiffs, in their Response to Defendant's Motion, assert that they did not allege a suit to quiet title, but rather "requested a declaration of title." Pl.'s Resp. ¶ 8. This is inconsistent with Plaintiffs' Original Petition and illogical. In their Original Petition, Plaintiffs asked the Court to "render all necessary orders to quiet title to the Property, to remove the cloud placed on the title to the Property and to make all necessary declarations to grant Plaintiffs full relief." Pl.'s Orig. Pet. ¶ 34. Furthermore, any declaration granting Plaintiffs title to the Property, would by necessity require removing Defendant's claim to title obtained at the foreclosure sale—precisely the operation a suit to quiet title performs.

Defendant's actions were extreme and outrageous." Pl.'s Resp. ¶ 9. Plaintiffs' allegations centering on foreclosure and contract issues are far from the type of allegations of outrageous and intolerable conduct required to sustain a claim for intentional infliction of emotional distress. *See Mann v. Amer. Fed. Life Ins., Co.*, 146 F.3d 868, 1998 WL 327238 at *3 (5th Cir. 1998) (contract dispute involving foreclosure failed to constitute intentional infliction of emotional distress). Accordingly, Plaintiffs' claim for intentional infliction of emotional distress is **DISMISSED with prejudice**.

## IV.

## CONCLUSION

For the foregoing reasons, Defendant Flagstar Bank, FSB's Motion to Dismiss is **GRANTED**. Plaintiffs' breach of contract claim, suit to quite title and claim for intentional infliction of emotional distress are **DISMISSED with prejudice**. Plaintiffs' claim for wrongful foreclosure is **DISMISSED without prejudice**.


SO ORDERED.

Signed March 22, 2012


JANE J. BOYLE
UNITED STATES DISTRICT JUDGE